UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **711 TCHOUPITOULAS CONDOMINIUM ASSOCIATION, INCORPORATED** | **CIVIL ACTION NO: 22-CV-276** |
| **VERSUS** | **JUDGE DARREL JAMES PAPILLION** |
| **INDEPENDENT SPECIALTY INSURANCE COMPANY** | **MAGISTRATE JUDGE JANIS VAN MEERVELD** |

## ORDER AND REASONS

Before the Court is a Motion to Compel Arbitration and to Stay, or Alternatively, Dismiss the Proceedings filed by Defendant Independent Specialty Insurance Company ("Defendant"). R. Doc. 30. Plaintiff 711 Tchoupitoulas Condominium Association Incorporated ("Plaintiff") opposes the motion. For the reasons assigned below, Defendant's motion is **GRANTED**, and this case is **STAYED** pending arbitration proceedings.

## BACKGROUND

This suit arises from an insurance coverage dispute following alleged damage to Plaintiff's property sustained during Hurricane Ida in August 2021. At the time of the alleged damage, Plaintiff's property was insured by a surplus lines policy (the "Policy") issued by Defendant. The Policy includes the following arbitration clause: "All matters in dispute between you and us . . . in relation to this Insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below." R. Doc. 30-1 at 2. On February 4, 2022, Plaintiff filed suit in this Court, alleging, among other things, breach of contract. R. Doc. 1. Thereafter, Defendant filed the instant motion to compel arbitration and stay or, in the alternative, dismiss these proceedings. R. Doc. 30.

## LAW AND ANALYSIS

The Federal Arbitration Act establishes a "liberal policy favoring arbitration" and a "strong federal policy in favor of enforcing arbitration agreements." *Texaco Expl. & Prod. Co. v. AmClyde Eng'red Prod. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983)). In determining whether to compel arbitration, "[t]he first step is to determine whether the parties agreed to arbitrate the dispute in question," which "involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996) (internal citation omitted). "The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (internal citation and quotations omitted). "When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Webb*, 89 F.3d at 258 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 944, 115 S. Ct. 1920 (1995)). Generally, courts "resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (internal citation and quotations omitted). Thus, "a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (internal citation and quotations omitted).

Plaintiff does not dispute that the claims at issue in this case fall within the scope of the arbitration agreement contained in the Policy, which broadly provides "[a]ll matters in dispute between [the parties] in relation to this Insurance . . . shall be referred to an Arbitration Tribunal."

2

R. Doc. 30-3 at 37.  Instead, Plaintiff argues Defendant waived its right to compel arbitration by actively participating in the litigation process.  Plaintiff also argues that, notwithstanding any potential waiver, the arbitration clause is invalid because Plaintiff did not consent to it and, alternatively, because arbitration clauses are impermissible under Louisiana law.  The Court will consider each of Plaintiff's arguments in turn.

    I.    *Whether Defendant Waived Its Right to Invoke Arbitration*

As an initial matter, Plaintiff argues Defendant waived any right it had to invoke arbitration by participating in the litigation process.  Indeed, a party can waive its right to arbitration, but "[t]here is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden."  *Unity Commc'ns Corp. v. Cingular Wireless*, 256 F. App'x 679, 681 (5th Cir. 2007) (citing *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)).  In considering whether a party has waived its right to arbitrate, the Court should consider "whether the defendant substantially invoked the legal process, and whether this prejudiced the plaintiff."  *Id.*

The Court is not persuaded by Plaintiff's argument that Defendant took steps to litigate this case that render Plaintiff's ability to invoke arbitration.  To be sure, Defendant did not immediately invoke arbitration, but this is because the parties first sought to resolve this matter outside of litigation.  Following Hurricane Ida in 2021, nearly eight thousand cases relating to damage caused by Hurricane Ida were filed in this District, and in response, the Court developed a special Case Management Order in an attempt to "eliminate increased difficulties to the parties involved, to bring as much of this litigation to resolution as justly and expeditiously as possible, and to allow the citizens of this District to move forward with their respective recoveries."  R. Doc. 15 at 1-2.  The Case Management Order seeks to provide, among other things, "a streamlined settlement

3

conference and mediation protocol" and "procedures for expedited discovery." *Id.* at 2. Participation in the Case Management Order, which places its focus on resolution of disputes is, in the Court's view, not the same as invoking the legal process. *See Queens Beauty Supply, LLC v. Indep. Spec. Ins. Co.*, No. 22-CV-3444, 2023 WL 7154117, at *1 (E.D. La. Oct. 31, 2023) *1 (explaining participation in the Eastern District of Louisiana's Case Management Order for Hurricane Ida claims "if anything, evidences a desire to *settle* this dispute, not to resolve it by litigation"). Moreover, while this case was in the Case Management Order, the parties did not engage in extensive discovery, nor did either party file a dispositive motion or motion practice in general. *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (finding defendant did not waive its right to arbitrate thirteen months after the suit was filed, in part, because "[t]he district court actions . . . mainly were routine scheduling orders and discovery continuances. [Defendant] did not ask the court to make any judicial decisions, for example, by requesting summary judgment"). Therefore, the Court finds Defendant did not substantially invoke the litigation process, and finds no prejudice on the part of Plaintiff and, for these reasons, rejects Plaintiff's waiver argument.

II.     Whether Plaintiff Consented to Arbitration

Plaintiff next argues the arbitration agreement is a clause of adhesion to which Plaintiff did not consent. A contract of adhesion "is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 8-9 (La. 2005) (internal citations and quotations omitted). In *Aguillard v. Auction Management Corporation*, the Louisiana Supreme Court applied the contract of adhesion analysis to determine whether an arbitration

agreement was enforceable and valid. *Id.* at 16. The Court ultimately found the clause was not adhesive, and in so finding, explained that the size and font of the arbitration agreement, while perhaps small, was not unreasonably small, did not differ in any way from the remainder of the contract, and was meaningfully separated from its neighboring provisions. *Id.* The Court also explained that the contract was an elective real estate transaction, and "if the plaintiff did not agree with the terms of arbitration or the terms in general, he could have either attempted to negotiate the terms of the contract or refused to participate in the auction." *Id.* at 16-17.

Here, Plaintiff rests its adhesion argument on the fact that it signed the Policy as a whole, not the specific arbitration agreement, which it argues was "buried" within the Policy. Plaintiff's argument, which is essentially that the arbitration clause was not made to stand out more than the other provisions in the Policy, is unfounded. A contract provision does not constitute an adhesive clause merely because it does not jump off the page. *See id.* at 16. The form and size of the arbitration agreement in this case matches that of the other Policy provisions, and it is meaningfully separated from the provisions around it, being designated its own number in a chronological list and identified with a bolded heading reading "Arbitration Clause." R. Doc. 30-3 at 37. Moreover, Plaintiff does not offer anything to show there was any disparity in the parties' bargaining power. Nothing calls into question Plaintiff's consent to the arbitration clause other than the fact that the provision did not require a separate signature, and the Court therefore finds the doctrine of contract adhesion is inapplicable in this case.

III. *Whether Arbitration Clauses Are Enforceable Under Louisiana Law*

Plaintiff's final argument in opposition to Defendant's invocation of arbitration is that arbitration provisions are unenforceable under Louisiana law. In support of its position, Plaintiff points to Louisiana Revised Statute Section 22:868(A) which provides, in relevant part:

5

> No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any . . . agreement . . . [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer.

LA. R.S. § 22:868(A). The parties appear to agree that Subsection A generally prohibits arbitration clauses, but they diverge on whether Subsection D of Section 22:868, which provides for an exception to Subsection A, applies in this case. Subsection D provides "[t]he provisions of Subsection A of this Section *shall not prohibit a forum or venue selection clause* in a policy form that is not subject to approval by the Department of Insurance." LA. R.S. § 868(D) (emphasis added). Plaintiff contends that while surplus lines policies may be exempt from approval by the Department of Insurance,[1] arbitration clauses are not "forum or venue selection clauses" and, therefore, do not fall under Subsection D's exception. Accordingly, the sole question before the Court is whether arbitration agreements are considered forum or venue selection clauses under Louisiana law.

After careful review of existing state authority, the Court answers this question in the affirmative. On more than one occasion, the Louisiana Supreme Court has expressed its view that arbitration agreements constitute forum selection clauses. In *Hodges v. Reasonover*, for example, the Court agreed with the United States Fifth Circuit Court of Appeals's classification of mandatory arbitration clauses as forum selection clauses, explaining "[a]n arbitration clause does not inherently limit or alter either party's substantive rights; it simply provides for an alternative venue for the resolution of parties." 103 So.3d 1069, 1076 (La. 2012) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 443-44 (5th Cir. 2008)). The Louisiana Supreme Court reiterated this position in *Donelon v. Shilling*, noting "[a]n arbitration clause has

---

[1] LA. R.S. § 22:446(A) ("The commissioner shall not require surplus lines insurers to file or seek approval of their forms and rates for property and casualty insurance except as provided in R.S. 22:1456(B)(2) relative to public carrier vehicles.").

6

been characterized by [the Louisiana Supreme Court] as a type of venue selection clause." 340 So.3d 786, 790 n.6 (La. 2020) (citing *id.*). Applying these precedents, the Court finds arbitration clauses are a type of forum or venue selection clause.

Plaintiff contends the Court should make some kind of distinction between arbitration clauses and other forum or venue selection clauses before arbitration clauses "take[] jurisdiction away from the Eastern District of Louisiana." R. Doc. 32 at 10. This argument has been raised in response to a number of motions to compel arbitration involving surplus lines policies and has largely been rejected. *See, e.g., Bourgeois v. Indep. Spec. Ins. Co.*, No. 22-CV-1256, 2023 WL 6644171 (E.D. La. Oct. 12, 2023); *Southland Circle, LLC v. Indep. Spec. Ins. Co.*, No. 23-CV-855, 2023 WL 7688570 (E.D. La. Nov. 15, 2023). In *Southland Circle, LLC v. Independent Specialty Insurance Company*, for example, Judge Vitter disposed of this precise argument, explaining:

> Plaintiff's reading of Subsection D would have the Court rewrite the statute to read "forum or venue selection clauses *which do not deprive a court of the jurisdiction of action*." That is not what the law provides. Instead, Subsection D broadly exempts all "forum or venue selection clause[s]" from Subsection A's prohibitions. No limitation is placed on the type or kind of forum or venue selection clause; by its terms, Subsection D includes every such clause. Nor, for that matter, is there any support for the theory that whether an arbitration clause is considered a forum selection clause depends on the context of a particular statute. Thus, the possibility that an arbitration clause may also oust a court of jurisdiction of action is of no import because Subsection D displaces Subsection A's proscription[.]

2023 WL 7688570, at *6. The Court agrees with Judge Vitter's analysis in *Southland Circle*. The plain wording of Subsection D exempts all forum and venue selection clauses in policy forms not subject to approval by the Department of Insurance. The statute does not include an additional qualifier, and the Court declines to find one where it does not exist. Because an arbitration clause

is a forum or venue selection clause, it is exempt from Subsection A under Subsection D, regardless of whether it deprives courts of jurisdiction.[2]  *Id.*

Having so concluded, the question before the Court is a matter of basic statutory interpretation.  Subsection A generally prohibits Louisiana insurance contracts from including, among other things, arbitration provisions.  Subsection D, however, expressly permits forum and venue selection clauses in surplus lines insurance policies.  Because Louisiana law considers arbitration clauses as a type of forum selection clause, the more specific provision, Subsection D authorizes arbitration clauses policies issued by in surplus lines insurers.[3]  For this reason, the arbitration clause, which is part of a surplus lines insurance policy, is permissible under Louisiana law.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** Defendant's Motion to Compel Arbitration and to Stay or, Alternatively, Dismiss the Proceedings (Record Document 30) is **GRANTED**.  This matter is **STAYED** until a final resolution of the arbitration proceedings has been rendered, and the Court, upon written motions of the parties, finds it appropriate to vacate the stay.

---

[2] Even if this argument was determinative, however, the Court would reject it because courts have routinely found arbitration clauses do not affect a courts' exercise of subject matter jurisdiction.  *Ruiz v. Donahoe*, 784 F.3d 247, 249-50 (5th Cir. 2015) ("[A]greements to arbitrate implicate forum selection and claims-processing rules, not subject matter jurisdiction."); *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp.*, 148 So.3d 871, 874 (La. 2014) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct. 1907 (1972)) ("[T]he traditional view that forum selection clauses impermissibly oust courts of jurisdiction [i]s a 'vestigial legal fiction.'"); *Creekstone Juban I, LLC v. XL Ins. Am., Inc.*, 282 So.3d 1042, 1047 (La. 2019) ("[W]here the parties have contracted for a particular forum or venue for litigating disputes, this does not mean they have deprived the court . . . to hear the dispute [*i.e.*, the jurisdiction]"."); *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 n.5 (5th Cir. 2002) (citing *Corion Corp. v. Chen*, 964 F.2d 55, 56-57 (1st Cir. 1992)) ("Federal courts of appeals have consistently found that district courts intend to retain jurisdiction when they stay proceedings pending arbitration.").

[3] The Court resolves the question before it based on the unambiguous language of Subsection D and, for that reason, need not consider the statute's legislative history.  LA. CIV. CODE art. 9 ("When a law is clear and ambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent.").

**IT IS FURTHER ORDERED** Defendant's Motion to Stay re Motion to Compel Arbitration and to Stay and/or Alternatively, Dismiss Proceedings (Record Document 44) is **DENIED AS MOOT**.

New Orleans, Louisiana, this 18th day of December 2023.

                                            **DARREL JAMES PAPILLION**
                                            **UNITED STATES DISTRICT JUDGE**